UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------x
                                            :
LISSA MORALES, et al.,                      :
                                            :
                        Plaintiffs,         :          No. 15-cv-6296 (TPG)
                                            :
            – against –                     :          **OPINION & ORDER**
                                            :
MW BRONX, INC., et al.,                     :
                                            :
                        Defendants.         :
                                            :
--------------------------------------------x
```

Plaintiffs Lissa Morales, Danny Jimenez-Corcione, and Thomas R. Martinez brought suit on August 11, 2015 against certain owners and supervisors of their former employer to recover unpaid minimum wages, overtime premium wages, liquidated damages, and statutory penalties under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and the New York Labor Law (NYLL), NYLL § 650 et seq. Plaintiff Morales, who joins plaintiffs Martinez and Jimenez-Corcione in these FLSA and NYLL claims, has brought additional claims relating to her treatment by one supervisor, including gender discrimination and retaliation under the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law (NYCHRL), N.Y. City Admin. Code § 8–101 et seq., and for intentional infliction of emotional distress.

For the reasons provided in the opinion below and in the appendices that follow it, the court grants plaintiffs' motion in part and reserves decision in part,

pending further briefing my plaintiffs Morales and Martinez.  Plaintiff Morales's sexual harassment–related claims are dismissed without prejudice for lack of subject-matter jurisdiction.

## Background

### A. Procedural History

Plaintiffs brought suit on behalf of themselves and all others similarly situated against the owners of their former employer restaurant, and three supervisors who were also employees of the restaurant.  All defendants were duly served with the summons and complaint.  ECF Nos. 5–7.  None of the defendants entered a notice of appearance, filed an answer, or otherwise moved with respect to the complaint, and the time for them to do so has passed.  Accordingly, on December 3, 2015, the Clerk of Court issued a Certificate of Default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  ECF Nos. 9–13.

On March 1, 2016, plaintiffs moved for default judgment, ECF Nos. 24–31, and, although defendants were served with copies of the motion, they failed to file any opposition.

Plaintiffs originally sought designation of this action as a collective action pursuant to 29 U.S.C. § 216(b).  Compl. ¶¶ 20–22.  Because plaintiffs now seek a default judgment and have not reiterated their request for collective action in the present motion, the court deems plaintiffs' collective action request to be waived.

2

## B. Factual History

Plaintiffs' complaint unfolds in two parts:  Part I covers all plaintiffs' wage and hour–related claims, and Part II addresses one plaintiff's allegations of sexual harassment, discrimination, and retaliation under state and municipal law.  The court accepts all well-pled facts in the complaint as true in this unopposed motion for default.  See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

Defendants MW Bronx, Inc. (MW) and Master Wok, Inc. (Master Wok) operate a restaurant known as Wok Restaurant, located at 200 Baychester Avenue in the Bronx.  Defendants Ryan Reymond Sanchez, Norma Doe, and Ken Doe, all of whose true last names were unknown to plaintiffs at the time the complaint was filed, Compl. ¶ 11, are employees of defendants MW and Master Wok who work at Wok Restaurant.  All of those individuals also acted as employers to all plaintiffs, with the power to determine payment, hire, fire, and supervise.  Compl. ¶ 15; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999), modified by Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir. 2003) (noting factors to consider when determining if a person or entity is an "employer" under the FLSA).

Plaintiffs Martinez, Morales, and Jiminez-Corcione are three former employees at Wok Restaurant.  They claim they were underpaid their due minimum wages, overtime wages, and spread-of-hours pay, and that defendants failed to provide them with wage-and-hour statements or an employment contract or employee handbook.  All plaintiffs seek relief that includes damages

3

(including liquidated damages), penalties, pre- and post-judgment interest, and attorney's fees and costs.  Compl. 24, ¶¶ A–H.

Each of the three plaintiffs worked at Wok Restaurant for only a brief period.  On December 9, 2014, defendant Ken Doe hired plaintiff Jimenez-Corcione to work as a server at an hourly rate of $8.50, though Jimenez-Corcione was paid only $8.25 per hour.[1]  In the first week of his employment, Jimenez-Corcione worked a total of 105 hours, 40 of which were regular hours and 65 of which were overtime.  Jimenez-Corcione Aff., Feb. 25, 2016, ECF No. 30, ¶¶ 6–9.  In the next and final four days of his employment, Jimenez-Corcione worked a total of 60 hours, 40 of which were regular hours and 20 of which were overtime hours.  Id.  In total, Jimenez-Corcione worked a total of 165 hours but was compensated for only 73 regular hours.[2]  In addition, Jimenez-Corcione says he never received a wage notice at the time of hiring, regular wage statements, or annual wage notices.  At some point, Jimenez-Corcione complained to defendants Norma Doe and Ken Doe that he was being shorted his wages, and Jimenez-Corcione's employment was terminated on December 19, 2014.  See Jimenez-Corcione Aff., Feb. 25, 2016, ECF No. 30, ¶ 14.

---

[1]     No allegations of wrongdoing arise out of this disparity for either Jimenez-Corcione or Martinez.

[2]     The complaint suggests that defendants failed to pay *any* plaintiffs the total overtime wages they were due.  Compl. ¶ 21.  Yet the attorney affirmation in support of the motion for default judgment contradictorily indicates that Jimenez-Corcione worked 85 hours overtime, was paid for 85 hours overtime, but was still owed 85 hours overtime.  Raic Affirmation 5 tbl. 2.  Jimenez-Corcione's affidavit does not explicitly state that his employer deprived him of any overtime pay.  See Jimenez-Corcione Aff. ¶¶ 8–9.  However, since the complaint suggests that Jimenez-Corcione was not paid overtime, the court will read the movant's papers charitably to assume that no overtime hours were paid to Jimenez-Corcione.

Plaintiff Martinez began working at Wok Restaurant on December 5, 2014, after Ken Doe hired him as a server.  Martinez Aff., Feb. 25, 2016, ECF No. 31, ¶ 2.  At the outset of his employment, Martinez never received a wage notice, regular wage statements, or annual wage notices.  Martinez, too, was promised an hourly rate of $8.50 but was paid only $8.25 per hour.[3]  He also claims he was underpaid and, after complaining to Ken Doe about his unpaid wages, Martinez's employment was terminated on December 22, 2014.  Martinez Aff., Feb. 25, 2016, ECF No. 31, ¶ 16.

The court lacks information sufficient to determine if Martinez's factual allegations are actionable.[4]  To make that determination, the court must know the total number of hours worked during his first week of work (12/05/14 through 12/11/14) and how much he was paid that week; the total number of hours worked during his second week of work (12/12/14 through 12/18/14) and how much he was paid that week, the total number of hours worked during his third week of work (12/19/14 through 12/25/14) and how much he was paid that week, what proportion of his payments (if any) were marked as overtime compensation, and on how many days Martinez worked an excess of ten hours.

Plaintiff Morales began working as a server at Wok Restaurant on December 11, 2014, and ceased working there on December 24, 2014.  Morales

---

[3]     See supra n.1.

[4]     This is because Martinez's papers are unclear about how many hours Martinez worked. It appears that he worked at Wok Restaurant for seventeen consecutive days. Whereas the attorney affirmation states that Martinez worked 122 regular hours and 32 overtime hours, Raic Affirmation 5 tbl. 3, Martinez's affidavit in support of the default motion states that he worked a total of 144 hours, 112 of which were regular hours and 32 of which were overtime.  Martinez Aff. ¶ 10.

Aff., Feb. 25, 2016, ECF No. 29, ¶¶ 2, 22.  She, too, was hired by Ken Doe to work as a server and agreed to an hourly rate of $8.25.  Morales never received a wage notice at the time of hiring, regular wage statements, or annual wage notices.

Morales's work shifts varied during her brief period of employment at Wok Restaurant.  But, like Martinez, Morales has provided the court with incorrect or, at least, irreconcilable information.  First, her affidavit is rife with mathematical error.  See, e.g., Morales Aff. ¶ 6 (miscalculating the number of hours she worked by stating that there are 8 hours between the hours of 10:00 AM and 7:00 PM, when, in fact, there are 9).  Second, she contends that she worked 136.5 hours of regular time in the two weeks of work at Wok Restaurant, id. ¶ 7, when this is not possible, since regular hours are defined based on a 40-hour work week, and any hours in excess of 40 in a seven-day period are considered overtime.

The court has recalculated Morales's hours based on the information provided in her Affidavit.  See App. A, infra.  According to the court's calculations, Morales worked a total of 157.5 hours in her fourteen days of employ at Wok Restaurant.  See App. A, infra; Morales Aff. ¶ 6.  She worked 40 regular hours in her first week and 30.5 overtime hours in her first week.  In her second week, Morales worked 40 regular hours and 47 overtime hours.  But the court still lacks the information necessary to determine if Morales's allegations are actionable.  To make that determination, Morales must confirm that she worked 30.5 overtime hours the first week and 47 hours overtime the second week,

separately state how much money she earned during her first and second weeks of work, indicate what proportion of her earnings (if any) were denoted as overtime payments, and specify the number of days she worked an excess of ten hours.

Plaintiff Morales has also separately alleged that, during the period she was employed at Wok Restaurant, she was repeatedly subjected to sexual harassment by defendant Sanchez.  He called her unsolicited pet names, attempted to touch her body, tried to follow her to the restroom, repeatedly asked her to be his girlfriend, and otherwise behaved inappropriately in the face of Morales's unambiguous aversion.  Morales complained to Norma Doe and Ken Doe about Sanchez's behavior.  While both Norma and Ken Doe asked Sanchez to leave Morales alone, nothing was done to discipline Sanchez.  In fact, following Morales's complaints, Sanchez intensified his harassing behavior.  Sanchez's behavior—and Ken and Norma Doe's apparent tolerance of it—forced Morales to end her employment at Wok Restaurant.  Morales Aff. ¶¶ 14–22.

Morales asserts that defendants created a hostile work environment that caused her severe emotional distress during the fourteen days that she was employed at Wok Restaurant and for a period of time afterward. Id. ¶ 24; Compl. ¶¶ 121–24.  Based on claims filed under state and municipal law, Morales seeks compensatory damages, including damages for mental and emotional injuries, punitive damages, pre- and post-judgment interest, restitution to her prior position, and attorney's fees and costs based on the allegations of sexual

7

harassment, employment discrimination and retaliation, and damages for intentional infliction of emotional distress. Compl. 24–25, ¶¶ A–G.

## **Discussion**

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for entry of a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by an affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may enter a default judgment on plaintiff's motion. Fed. R. Civ. P. 55(b)(2).

A plaintiff is not entitled to default judgment as a matter of right merely because an opposing party has failed to appear or respond. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993). To determine whether the default judgment should issue, the court examines whether "the facts alleged constitute a valid cause of action." Clark v. Gotham Lasik, PLLC, No. 11-cv-01307, 2013 WL 4437220, at *3 (S.D.N.Y. Aug. 20, 2013) (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In making this determination, the court must "accept[] as true all of the factual allegations of the complaint," id., and "a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability." Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) (internal quotation marks omitted).

8

By contrast, the court need not accept as true any allegations relating to damages. Finkel, 577 F.3d at 84. Violations of the "NYSHRL[] and NYCHRL entitle a plaintiff to compensatory damages for pecuniary loss as well as pain and suffering." DeCurtis v. Upward Bound Int'l, Inc., No. 09-cv-5378, 2011 WL 4549412, at *3 (S.D.N.Y. Sept. 27, 2011) (internal quotation marks and citation omitted). Punitive damages are available under the NYCHRL, N.Y.C. Admin. Code § 8-502(a), but not the NYSHRL, see Syrnik v. Polones Constr. Corp., 918 F. Supp. 2d 262, 265 (S.D.N.Y. 2013). To establish damages, the court may either hold a hearing or rely upon affidavits and documentary evidence. Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993).

The court also notes that, while an employee-plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated," Santillan v. Henao, 822 F. Supp. 2d 284, 293–94 (E.D.N.Y. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by 29 U.S.C. § 251 et seq.), where an employer has defaulted, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002) (quoting Anderson, 328 U.S. at 687), overruled on other grounds by Slayton v. Am. Express Co., 460 F.3d 216 (2d Cir. 2006). In light of these holdings, where a defendant-employer defaults in an FLSA action, a plaintiff may meet this burden of proof "by relying on his recollection alone." Doo

Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  The same is true in an action under the NYLL.  See Liu v. Jen Chu Fashion Corp., No. 00-cv-4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan.7, 2004).

## A. Subject-Matter Jurisdiction

Plaintiffs have filed Part I of this action for various wage-related claims under both state and federal law.  When a federal district court has original jurisdiction over some defendants in an action due to the nature of the claims against those defendants, it also has supplemental jurisdiction over pendent parties and claims, so long as the cause of action against those other defendants arises from the same case or controversy.  See 28 U.S.C. § 1367(a); see also Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 332–33 (2d Cir. 2011) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)).  The "same case or controversy" requirement is satisfied when the two disputes "derive from a common nucleus of operative fact."  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (quoting Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 254 (2d Cir. 1991)) (internal quotation marks omitted).  To determine whether two disputes arise from a "common nucleus of operative fact," courts ask whether "the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court."  Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000) (internal citations omitted).  Supplemental jurisdiction is lacking "when the federal and state claims rest[] on essentially unrelated facts."  Id.

10

Although supplemental jurisdiction is discretionary, once a court determines that certain claims constitute part of the same case or controversy, the exercise of supplemental jurisdiction is the preferred course of action unless there is a compelling reason against it. See Promisel, 943 F.2d at 254. Courts generally exercise supplemental jurisdiction if "considerations of judicial economy, convenience and fairness to litigants" weigh in favor of hearing all of the claims together. Id. (citing Gibbs, 383 U.S. at 726).

As to the wage-related claims in Part I of this matter, the court has original jurisdiction over the FLSA claims because they arise under federal law. The court will exercise its supplemental jurisdiction over plaintiffs' state-law wage-related claims as well since all wage-related claims in this case arise out of the same set of facts.

The same is not true of Morales's sexual harassment–related claims in Part II of the complaint. For the reasons detailed in Part E of this opinion, infra, the court declines to exercise subject-matter jurisdiction over Morales's sexual harassment–related claims.

**B. Statutes of Limitation**

The plaintiffs have made claims pursuant to both state and federal wage laws. Because the statute of limitations under the NYLL is six years, and the causes of action arose in 2014, the court finds that all claims by all plaintiffs are timely for the purposes of state-law violations. NYLL § 663(3); see also Lanzetta v. Florio's Enters., Inc., 763 F. Supp. 2d 615, 622 (S.D.N.Y. 2011).

11

The statute of limitations under the FLSA is much shorter, extending for only two years unless an employer's violations are found to be "willful," in which case it is three years, rather than two.  29 U.S.C. § 255(a); see also Lanzetta, 763 F. Supp. 2d at 622.  A violation is "willful" when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited," Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999).

The complaint alleges that all of the violations were undertaken "knowingly, intentionally and willfully," Compl. ¶¶ 25, 37, 44, 65, and plaintiffs' well-pleaded allegations are deemed admitted due to defendants' default, , see, e.g., Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08–cv–3725, 2010 WL 4159391, at *1 (S.D.N.Y. Sept. 30, 2010).  Therefore, the three year statute of limitations will apply because plaintiffs are entitled to a finding that the defendants' conduct was willful.  See, e.g., Pineda v. Masonry Constr., Inc., 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011).  Again, because plaintiffs' causes of action began to accrue in December 2014, the three-year NYLL statute of limitations does not bar plaintiffs' claims here.

### C. Liability for Violations of the FLSA and NYLL

#### 1. FLSA Liability

Plaintiffs have moved for default judgment on two claims under the FLSA against all defendants: (1) failure to pay the applicable minimum wage, and (2) failure to pay overtime premium wages.  Mem. L. in Supp. of Mot. for Default ¶ 3; Compl. ¶ 23.

12

An employer may be subject to liability under the FLSA if it is "an enterprise engaged in commerce . . . ."   29 U.S.C. §§ 206(b), 207(a).   An enterprise under the FLSA is one that: (1) "has employees engaged in commerce or in the production of goods for commerce," or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) has annual gross volume of sales made or business done of not less than $500,000. 29 U.S.C. § 203(s)(1)(A).   Individual defendants may also be subject to FLSA liability if they exercise "operational control" over the plaintiff-employee.   Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013).

Employers subject to the FLSA must compensate their employees at a rate not less than the prevailing minimum wage based on a forty-hour work week. 29 U.S.C. §§ 206(a)(1), 207.   The FLSA provides for recovery only to the extent that the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable federal minimum wage.

Here, Wok Restaurant is alleged to have an annual gross volume of sales in excess of $500,000, Compl. ¶ 10, and the complaint also alleges that defendants engage in interstate commerce or the production of goods for commerce, Compl. ¶ 36.   Individual defendants Ken Doe, Norma Doe, and Sanchez exercise control over Wok Restaurant's day-to-day operations; manage the restaurant's financials; and have the authority to hire, terminate, and discipline employees. Compl. ¶¶ 13–16. The individual defendants thus exercise operational control within the meaning of the FLSA.

Employers must also pay their employees at least the federal minimum wage. The federal minimum wage was $7.25 per hour as of the dates of plaintiffs' employment.   See 29 U.S.C. § 206.   However, courts in this circuit have interpreted the FLSA to require that employers must pay their employees the state minimum wage if it exceeds the federal minimum wage.   See, e.g., Wicaksono v. XYZ 48 Corp., 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), R. & R. adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (citing 29 U.S.C. § 218(a)) (quoting Jiao v. Chen, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)); see also Cao, 2010 WL 4159391, at *2 n.2.   At the time of plaintiffs' employment, the New York state minimum wage was $8.00/hour, which exceeded the federal minimum wage of $7.25/hour.   Compare 29 U.S.C. § 206 with NYLL § 652(1). Therefore, the court will use the $8.00/hour minimum wage as a point of reference.   Additionally, employees who work more than 40 hours in a single work week are also entitled to an overtime wage of not less than one and one-half times the regular rate.   29 U.S.C. § 207(a)(1).

In this case, plaintiffs Martinez, Morales, and Jiminez-Corcione assert minimum wage and overtime allegations, but each plaintiffs' assertions of fact suffer from some defect.[5]  Jimenez-Corcione's is the only case that the court can calculate on the basis of the present record.

Jimenez-Corcione alleges that he worked 40 hours of regular time and 65 hours of overtime during his first week of employment.   See Jimenez-Corcione Aff. ¶ 7.  In his second week, he worked 40 regular hours and 20 overtime hours.

---

[5]        See supra pp. 4–7.

14

Id.  However, defendants compensated Jimenez-Corcione for 73 regular hours and no overtime.  While Jimenez-Corcione should have provided the court with information about how much he was compensated per week, because he only worked two weeks at Wok Restaurant and was paid no overtime at all,[6] the court is able calculate his compensatory damages by inference.

Jimenez-Corcione was paid for 73 regular hours when he should have been paid for 80 regular hours of work.  His regular rate of pay was therefore $7.53/hour, which falls below the minimum wage of $8/hour by a rate of $0.47/hour.  He is also owed for 85 overtime hours, for which he should have been paid time-and-a-half, or $12.00/hour.  These shortfalls mean that Jimenez-Corcione has stated a cause of action for unpaid minimum and overtime wages under the FLSA.  Accordingly, the court finds defendants liable for failing to pay Jimenez-Corcione the prevailing minimum wage under the FLSA and for failing to pay Jimenez-Corcione adequate overtime wages to which he was entitled under the FLSA. The calculation of damages due to him is set forth later in this opinion.

The court is unable to determine whether Martinez or Morales have set forth cognizable FLSA claims because neither has consistently or clearly stated the number of regular and overtime hours they worked in each work week.[7] Consequently, the court cannot grant Morales's or Martinez's requests for default

---

6       See supra n.2.
7       See supra n.4 (pointing out that the attorney affirmation states that Martinez worked 122 regular hours and 32 overtime hours, Raic Affirmation 5 tbl. 3, but Martinez's own affidavit in support of the default motion states that he worked a total of 144 hours, 112 of which were regular hours and 32 of which were overtime; supra pp. 5–6 (explaining inconsistencies in Morales's papers) & App. A, infra.

on their wage and hour allegations.  The court declines to credit those allegations with leave to supplement the record consistent with this opinion.  Morales and Martinez must also support the newly provided information by separate sworn affidavit.

    2. <u>NYLL Liability</u>

Plaintiffs have also moved for default based on five claims under the NYLL: (1) failure to pay the applicable minimum wage; (2) failure to pay overtime wages; (3) failure to pay "spread-of-hours" wages; (4) failure to provide wage statements; and (5) failure to furnish a notice of pay rate at the time of hiring.  Mem. L. in Supp. of Mot. for Default ¶¶ 3, 6–7; <u>see also</u> Compl. ¶ 23.

Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law. <u>See</u> NYLL § 651(6).  Further, an employee is simply "any individual employed or permitted to work by an employer in any occupation . . . ." NYLL § 651(5).  In the instant matter, all plaintiffs have adequately alleged that they are covered employees under the NYLL.

Like the FLSA, the NYLL sets forth minimum wage and overtime wages for covered employees, NYLL § 652; N.Y. Comp. Codes R. & Regs. tit. 12 §§ 142-2.1, 142–2.2, and requires employers to provide a regular wage statement with each payment of wages, NYLL § 195(3).  Between December 31, 2013, and December 31, 2014—the relevant year in which all plaintiffs worked for defendants at some point—the minimum wage under the NYLL was $8.00.  <u>See</u> History of the Minimum         Wage,         Dept.         of         Labor,

16

https://www.labor.ny.gov/stats/minimum_wage.asp. The NYLL provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled . . . he or she shall recover in a civil action the amount of any such underpayments . . . ." NYLL § 663(1). Full-time employment is considered 40 hours per week, and any additional time is considered overtime, for which the employee must be compensated at a rate of time-and-a-half. NYLL §§ 206–07, 652.

In addition, the NYLL requires employers to pay an employee who works a "spread of hours" in excess of 10 hours an additional hour of pay at the minimum wage rate. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. New York defines spread of hours as "the length of the interval between the beginning and end of an employee's workday," which "includes working time plus time off for meals plus intervals off duty." Id. § 146-1.6. An employee is due one additional hour of compensation at the $8.00 minimum wage for each day that he worked a workday with a spread of hours in excess of ten hours, plus interest. New York's statutory interest rate of nine percent, C.P.L.R. § 5004, applies to NYLL spread-of-hours claims.

All plaintiffs also seek to recover damages for defendants' failure to provide a wage notice at the time of hiring, regular wage statements, and annual wage notices as required by the Wage Theft Prevention Act (WTPA), an amendment to the NYLL that became effective on April 9, 2011. NYLL § 195, et seq. Since all plaintiffs have adequately alleged without opposition that they were deprived of

17

a wage notice at the time of hiring, regular wage statements, and annual wage notices, defendants are liable for those violations.

The following are the relevant findings as to plaintiff Jimenez-Corcione under discussion in this section of the opinion.[8]  Jimenez-Corcione was not provided a minimum wage for regular hours, was deprived of his due spread-of-hours pay, and was not paid for the 85 overtime hours he worked.  Additionally, Jimenez-Corcione has properly alleged that defendants failed to provide him with spread-of-hours compensation when his workday exceeded ten hours.  Here, defendants are liable to Jimenez-Corcione for one additional hour of compensation at the $8.00 minimum wage for each day that he worked a workday with a spread of hours in excess of ten hours, plus interest.  New York's statutory interest rate of nine percent, C.P.L.R. § 5004, applies to NYLL spread-of-hours claims.

### D. Damages for FLSA and NYLL Violations

#### 1. Compensatory Damages

Plaintiffs who prevail on claims brought under the FLSA are entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation," in addition to reasonable attorney's fees and costs.  29 U.S.C. § 216(b).  The NYLL similarly allows for the recovery of "the amount of any such underpayments, together with costs[,] all reasonable attorney's fees, [and]

---

[8]     As discussed above, the court is unable to determine whether or to what extent Martinez and Morales were underpaid for regular or overtime hours.  See supra pp. 4–6 & text accompanying p. 14 n.5.  The court will not make any determinations about Morales's or Martinez's spread-of-hours compensation until those parties provide the court with the information needed.

prejudgment interest as required under the civil practice law and rules." NYLL § 663(1). Defendants may, therefore, be liable to plaintiffs for back pay to the extent of the unpaid overtime, minimum wage, and spread-of-hours compensation to which each plaintiff is owed. Plaintiffs may also be entitled to attorney's fees and costs.

The law of this Circuit is clear: "Obviously, plaintiffs are not entitled to recover twice" under both the FLSA and NYLL "for the same injury." See Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08-cv-3725, 2010 WL 4159391, at *2 n.2; see also, e.g., Maldonado v. La Nueva Rampa, Inc., No. 10-cv-8195, 2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012); Jiao v. Shi Ya Chen, No. 03-cv-0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007). Where, as here, "a plaintiff is entitled to damages under both federal and state wage law" for the same time period, the court has discretion to award that plaintiff damages under the statute providing the greatest amount of relief. Jiao, 2007 WL 4944767, at *17.

As stated earlier in this opinion, the court can calculate damages only as to plaintiff Jimenez-Corcione. The court calculates that, based on Jimenez-Corcione's statements and the hourly estimates as summarized in Appendix B, (Table 1), Jimenez-Corcione is entitled to $37.75 in unpaid minimum wages.

Jimenez-Corcione must also receive credit for uncompensated overtime work. Based on the regular hourly rate at which he was to be paid per week during his employment and the evidence in the record as summarized in Appendix B (Table 2), Jimenez-Corcione is entitled to $1,020.00 in unpaid overtime wages. Additionally, there were 11 days on which Jimenez-Corcione

19

worked a spread of hours greater than 10 hours.  He is therefore entitled to an additional $88.00 in compensation for spread-of-hours pay under the NYLL.  See App. B, Tbl. 1.

In all, and not including interest, Jimenez-Corcione is owed $1,145.75 in unpaid minimum wages, overtime wages, and spread-of-hours compensation. See App. B, Tbls. 1–2.

### 2. Liquidated Damages

Plaintiffs also seek liquidated damages under both the FLSA and the NYLL. It is first necessary to determine whether and to what extent liquidated damages are, in fact, appropriate here.

The FLSA and the NYLL allow for the recovery of liquidated damages in addition to compensatory damages.  Under the FLSA, liquidated damages equal 100% of the amount of compensatory damages for unpaid minimum and overtime wages.  29 U.S.C. §§ 216(b).  Similarly, the NYLL makes liquidated damages available in an amount equal to 100% of the improperly withheld pay for violations of the NYLL committed during the period that plaintiffs worked for defendants.  See NYLL § 198(1-a).  Both statutes allow an employer to avoid paying liquidated damages if the employer can prove that it had a good-faith belief that it was complying with the law.

The NYLL and FLSA were not always so analogous.  Prior to 2009 under the NYLL, an employee could collect liquidated damages of 25% of the total unpaid wages by establishing that the employer's violations were willful.  Under this pre-2009 statutory scheme, liquidated damages under the NYLL were

20

thought to "'constitute a penalty' to deter an employer's <u>willful</u> withholding of wages due." <u>Reilly v. Natwest Markets Grp. Inc.</u>, 181 F.3d 253, 265 (2d Cir. 1999) (quoting <u>Carter v. Frito-Lay, Inc.</u>, 74 A.D.2d 550, 425 N.Y.S.2d 115, 116 (1st Dep't 1980) (1981)) (emphasis added).

In April 2009, the New York Legislature removed the "willfulness" requirement and shifted the burden to the employer to put forth a "good faith" defense. <u>See</u> 2009 N.Y. Laws ch. 372 § 1, amending NYLL § 198(1-a); <u>see also</u> 2009 N.Y. Laws ch. 372 § 3 (amending NYLL § 663(1)). Then, in 2011, the New York Legislature brought the NYLL further in line with the FLSA by increasing the liquidated damages recovery from 25% to 100% of the amount of compensatory damages for unpaid minimum and overtime wages. 2010 N.Y. Laws ch. 564 §§ 7, 16.

Whereas courts once classified the pre-2009 NYLL liquidated damages provision as "punitive," <u>see</u> <u>Reilly</u>, 181 F.3d at 265, courts now characterize the NYLL and FLSA liquidated damages provision as "more directly in line with one another," <u>McGlone v. Contract Callers Inc.</u>, 114 F. Supp. 3d 172, 174 (S.D.N.Y. 2015), and the differences between them merely "semantic," <u>see, e.g.</u>, <u>Gortat v. Capala Bros.</u>, 949 F. Supp. 2d 374, 381 (E.D.N.Y. 2013). <u>See, e.g.</u>, <u>Andrade v. 168 First Ave Rest. Ltd.</u>, No. 14-cv-8268, 2016 WL 3141567, at *7 (S.D.N.Y. June 3, 2016); <u>Hengjin Sun v. China 1221, Inc.</u>, No. 12-cv-7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016); <u>Inclan v. New York Hosp. Grp., Inc.</u>, 95 F. Supp. 3d 490, 506 (S.D.N.Y. 2015); <u>Chen v. New Fresco Tortillas Taco LLC</u>, No. 15-cv-2158, 2015 WL 5710320, at *6 (S.D.N.Y. Sept. 25, 2015). <u>But see, e.g.</u>,

Hernandez v. Jrpac Inc., No. 14-cv-4176, 2016 WL 3248493, at *35 (S.D.N.Y.
June 9, 2016).

There is no appellate authority as to whether awarding overlapping
liquidated damages under the FLSA and the NYLL is appropriate, and district
courts in this Circuit are sharply divided on the issue.

The court is persuaded by the arguments disallowing overlapping
liquidated damages awards.  The view that NYLL liquidated damages were
penalties rather than compensation rested on the premise that NYLL liquidated
damages required proof of the employer's willfulness.  As discussed above, the
New York Legislature abolished the willfulness requirement in 2009. Therefore,
this premise is no longer accurate, and the distinction drawn between the
statutes' supposed purposes is no longer persuasive.

There is also reason to believe that the dichotomy between the
compensatory and punitive natures of the FLSA and NYLL, respectively, was
always a false one. As noted, the FLSA provides that a defendant-employer may
have a good faith defense to liquidated damages.  But if liquidated damages
under the FLSA were truly only compensatory in nature, an employer's good faith
would be immaterial, since "[g]ood faith mitigates exemplary damages, not
compensatory damages." Yun Hong Hua, No. 15-cv-0275, 2015 WL 2354322,
at *3.

The distinction between the two liquidated damages statutes further
collapses in light of the 2009 and 2011 legislative changes to the NYLL discussed
above.  It is fitting that courts have recently concluded that  "both forms of

liquidated damages serve the same purpose and have the same practical effect of deterring wage violations <u>and</u> compensating underpaid workers," <u>Chen</u>, No. 15-cv-2158, 2015 WL 5710320, at *7 (emphasis in original).  To the extent that this court understands both liquidated damages provisions to be at least partly compensatory in nature, overlapping damages are inappropriate where separate awards are based on the same conduct.  <u>See</u> <u>Ostano Commerzanstalt v. Telewide Sys., Inc.</u>, 880 F.2d 642, 649 (2d Cir. 1989).

Accordingly, this court declines to award overlapping liquidated damages under both the FLSA and the NYLL.  Courts taking this approach apply whichever liquidated damage statute results in the higher award for the plaintiff. <u>See, e.g.</u>, <u>Jimenez v. Computer Express Int'l Ltd.</u>, No. 14-cv-5657, 2015 WL 1034478, at *2 (E.D.N.Y. Mar. 10, 2015); <u>Pineda-Herrera v. Da-Ar-Da, Inc.</u>, No. 09-cv-5140, 2011 WL 2133825, at *5 (E.D.N.Y. May 26, 2011).  So too does this court.

Liquidated damages under the NYLL afford plaintiff Jimenez-Corcione the greatest relief here.[9]  Jimenez-Corcione is entitled to liquidated damages of one hundred percent on his unpaid regular wages, overtime wages, and spread-of-hours claims, which amount to $1,145.75.

### 3. <u>Compensation for Wage Notice and Statement Violations</u>

As noted above, plaintiffs assert that they were never given compliant wage statements.  New York law entitles them each to statutory damages in the amount of $250 per work day, not to exceed $5,000, for each work day that

---

[9]     This is necessarily so because the FLSA calculation would exclude spread-of-hours pay.

plaintiffs were employed by defendants.   See NYLL § 198(1-d).   Additionally, plaintiffs are each owed $50 per work week, not to exceed $5,000, for defendants' failure to furnish each employee with a wage notice at the time of hiring.   NYLL § 198(1-b).   Accordingly, Jimenez-Corcione is owed $2,850, see App. C, Tbl. 1, Morales is owed $3,500, see App. C, Tbl. 2, and  Martinez is owed $4,400, see App. C, Tbl. 3.

### 4. Prejudgment Interest

Plaintiffs seek prejudgment interest on their state law claims.   Mem. L. in Supp. of Mot. for Default ¶ 24.   Interest is not awarded under the FLSA when FLSA liquidated damages are awarded, as interest is assumed to be included under liquidated damages.   See, e.g., Brock v. Superior Care, Inc., 840 F.2d 1054, 1065 (2d Cir. 1988).   However, prejudgment interest is still appropriate where a plaintiff is awarded liquidated damages under the NYLL.   See, e.g., Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).

In a diversity case, state law governs the award of prejudgment interest. See Baker v. Dorfman, 239 F.3d 415, 425 (2d Cir. 2000).   Prejudgment interest under the NYLL is calculated at the rate of nine percent per annum on unpaid wages recovered under the NYLL.   See C.P.L.R. §§ 5001, 5004; see also Maldonado v. La Nueva Rampa, Inc., No. 10-cv-8195, 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012) ("Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages."). Interest is calculated using the simple rate, not a compounded rate, see Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998) holding modified by 271

24

F.3d 81 (2d Cir. 2001), and begins to accrue on one of two dates: "Where []
damages were incurred at various times, interest shall be computed upon each
item from the date it was incurred or upon all of the damages from a single
reasonable intermediate date." C.P.L.R. § 5001(b) (emphasis added). The date
of choice is left to the district court's discretion, as is the method of calculating
the "single reasonable intermediate date." See Marfia, 147 F.3d at 91.

Because damages on Jimenez-Corcione's claim were incurred at "various
times, pre-judgment interest will be calculated from an intermediate date.
Jimenez-Corcione has not suggested a date on which pre-judgment interest
should begin to accrue. The court selects the midpoint date between Jimenez-
Corcione's first and last days of employment at Wok Restaurant, or December
14, 2014.[10]

The court calculates a daily interest rate of .0002 (nine percent divided by
365 days), which it multiplies by Jimenez-Corcione's NYLL recovery of
$1,145.75, resulting in $0.28 per diem. Applying this per diem interest rate to
the unpaid regular and overtime wages award of $1,145.75 for the period of
December 14, 2014 until August 1, 2016 produces an interest award of
$1,314.41.[11]

---

[10]     The court has observed that a single midpoint is commonly used in this Circuit. See
Callier v. Superior Bldg. Servs., Inc., No. 09-cv-4590, 2010 WL 5625906, at *4 (E.D.N.Y. Dec. 22,
2010), R. & R. adopted, No. 09-cv-4590, 2011 WL 222458 (E.D.N.Y. Jan. 21, 2011) (citing cases).
[11]     $1,145.75 + ($0.28 x 597 days) = $1314.41

5. Post-Judgment Interest

In contrast to pre-judgment interest, post-judgment interest is governed by federal statute. 28 U.S.C. § 1961(a) states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Post-judgment interest is calculated from the date of the entry of the judgment, at the weekly average 1-year constant maturity U.S. Treasury yield rate published by the Board of Governors of the Federal Reserve System for the preceding calendar week. Id.

Such interest accrues automatically by operation of law, and the Court of Appeals has consistently held that an award of post-judgment interest is mandatory. Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008). Accordingly, the court will award post-judgment interest here even though plaintiffs failed to renew their request for it in their motion for default. Compare Compl. ¶¶ 38, 42, 47, 51, 56, 59, 63 & p. 24 (requesting post-judgment interest), with Mem. L. in Supp. of Default & Raic Affirmation (failing to mention or request post-judgment interest).

6. Attorney's Fees & Costs for Wage-Related Claims

Under the FLSA and NYLL, a prevailing plaintiff is entitled to reasonable attorney's fees and costs. 29 U.S.C. § 216(b); NYLL § 663(1); Young v. Cooper Cameron Corp., 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'") (quoting 29 U.S.C. § 216(b)). A defendant's failure to pay the attorney's

fees causes the portion of fees awarded for the NYLL violation to increase by 15 percent. NYLL § 663(4).

In determining an appropriate award of attorney's fees and costs, courts consider the factors listed in McGrath v. Toys "R" Us, Inc., 3 N.Y.3d 421, 429 n.1 (2004): the degree of success; the time and labor required; the novelty and difficulty of the questions; the skill required to perform the legal services properly; the preclusion of other legal work resulting from the acceptance of this case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the experience, reputation and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in factually and procedurally similar cases.

Plaintiffs' counsel here has not specified the amount requested in reasonable fees, nor has counsel provided the court with any information about his normal hourly rate, his experience in the field of employment law, or estimates of the time he spent on the case, the costs he incurred, or any billing records substantiating those figures. See Raic Affirmation 9. Insofar as counsel provides briefing as to his fees and costs, those figures should relate to work performed on plaintiffs' wage-related claims only. The court will reserve judgment on the extent to which attorney's fees and costs will be awarded.

### E. Additional Claims by Plaintiff Morales

In Part II of the complaint, plaintiff Morales alleges additional claims for relief under the NYCHRL and NYSHRL based on alleged sexual harassment and

27

gender discrimination in the workplace. Morales further alleges that her treatment made working at Wok Restaurant so unbearable that she was constructively terminated. See Compl. ¶¶ 127–30 (relating to sex discrimination under the NYSHRL), 131–35 (retaliation under the NYSHRL); 136–44 (gender discrimination and retaliation under the NYCHRL), and 145–50 (intentional infliction of emotional distress). As noted above, a court may exercise supplemental jurisdiction over claims not containing a federal question or supported by diversity jurisdiction. See supra pp. 10–11. Supplemental jurisdiction is proper only where claims are part of the same case or controversy or, put differently, when the claims arise from the same common nucleus of operative fact.

Here, Part I of the complaint sets forth all plaintiffs' wage-related claims under both state and federal law, and Part II of the complaint relates to Morales's sexual harassment–related claims under state law only. Because Morales has not alleged any causes of action under federal law based on sexual harassment, the court must assess the connection between Morales's federal-law claims, which relate solely to wage-related claims, and her claims based on sexual harassment under state and municipal law.

The complaint states that the court has original jurisdiction because the claims brought under the FLSA present federal questions. Compl. ¶ 1. The complaint then presumes that this court has supplemental jurisdiction over all New York State and City claims in the two-part complaint because "they are so related in this action within such original jurisdiction that they form part of the

28

same case or controversy under Article III of the United States Constitution." Id. None of plaintiffs' filings attempt to explain or justify how plaintiffs' wage-related claims relate to Morales's sexual-harassment claims.

Plaintiffs' wage-related claims, which were originally styled as a collective action, were alleged under the FLSA as well as state and municipal law. Those claims hinged solely on the number of hours worked, the compensation received, and wage-related notice deficiencies. By contrast, Morales's sexual harassment–related discrimination and retaliation claims involve vastly different and unrelated factual issues, including, for example, whether defendants took an adverse employment action under circumstances supporting an inference of discrimination or retaliation. Morales also asserts a claim for intentional infliction of emotional distress, a claim that is highly bound up in the nuances of New York state tort law. While this court is equipped to interpret and apply state law where supplemental jurisdiction exists, the court cannot do so here where Morales's claims would be based on evidence and information completely unrelated to plaintiffs' wage-related claims.

In the wage and employment discrimination contexts, courts have dismissed claims for lack of subject-matter jurisdiction even where the connection between the two causes of action is less tenuous. See, e.g., Figurowski v. Marbil Inv'rs, LLC, No. 14-cv-7034, 2015 WL 4000500, at *3 (E.D.N.Y. July 1, 2015) (finding no common nucleus of operative fact where the "only discernible factual connection between the FLSA claim and the state law claims is the fact that these claims arose out of Plaintiff's employment

29

relationship"). Moreover, several courts addressing similar situations have held that the employment relationship itself is insufficient to create a "common nucleus of operative fact" between an FLSA claim and a state-law, non-wage claim. See, e.g., Hernandez v. Mauzone Home Kosher Prods. of Queens, Inc., No. 12–cv–2327, 2013 WL 5460196, at *6 (E.D.N.Y. Sept. 30, 2013) (sua sponte dismissing the plaintiff's state-law discrimination claims for lack of subject-matter jurisdiction because they "involve[d] different rights, different interests, and different underlying facts from her [FLSA] wage claims" (internal quotation marks and citation omitted)); Hahn v. Rocky Mountain Express Corp., No. 11-cv-8512, 2012 WL 2930220, at *1 (S.D.N.Y. July 16, 2012) (finding lack of subject-matter jurisdiction where only overlap between state and city law age-discrimination claims and federal-law wage claims was employment by defendant); Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 395 (E.D.N.Y. 2007) ("Plaintiff's employment relationship is insufficient to create a 'common nucleus of operative fact' where it is the sole fact connecting plaintiff's federal overtime claim and the remaining state law claims [of employment discrimination]."); see also Lyon v. Whisman, 45 F.3d 758, 762 (3d Cir. 1995) (holding that supplemental jurisdiction did not exist over state-law breach-of-contract claim that "involved [the defendant's] alleged underpayment of a bonus" because the facts relevant to that claim "were quite distinct" from those relevant to the plaintiff's FLSA claim).

The court finds here that it lacks supplemental jurisdiction to adjudicate Morales's sexual harassment–related claims because they do not share a

common nucleus of operative fact with her wage-related claims.  They involve "different rights, different interests, and different underlying facts" than her wage-related claims, and supplemental jurisdiction is therefore lacking. <u>Hernandez v. Mauzone Home Kosher Prods. of Queens, Inc.</u>, No. 12–cv–2327, 2013 WL 5460196, at *6 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

Even if this court held the power to exercise supplemental jurisdiction over Morales's sexual harassment–related claims, "[t]hat power need not be exercised in every case in which it is found to exist." <u>Gibbs</u>, 383 U.S. at 726.  A court's discretion to exercise supplemental jurisdiction "is limited . . . by the consideration that '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" <u>Fay v. S. Colonie Cent. Sch. Dist.</u>, 802 F.2d 21, 34 (2d Cir. 1986) (quoting <u>Gibbs</u>, 383 U.S. at 726).  Morales does not stand to suffer prejudice by this ruling, particularly when discovery has not been taken and briefing has been extremely limited because defendants have failed to appear or file any responsive pleadings.

Accordingly, Morales's claims set forth in Part II of the complaint are dismissed for lack of subject-matter jurisdiction without prejudice to refiling in state court.

## **Conclusions**

For the foregoing reasons, plaintiffs' motion for a default judgment against defendant is granted in part and denied in part.

31

Specifically, the court holds, as to Part I of the complaint, that: (1) defendants violated plaintiff Jimenez Corcione's rights under the NYLL and FLSA, and defendants owe him for unpaid minimum wages, overtime wages, and spread-of-hours pay for a total of $1,145.75; (2) Jimenez Corcione is owed an additional $1,145.75 in liquidated damages, plus  $1,314.41 in pre-judgment interest as well as post-judgment interest; (3) Jimenez Corcione is owed attorney's fees and costs in an amount to be determined after counsel provides additional information to the court; (4) plaintiffs Martinez and Morales shall, by August 22, 2016, provide by affidavit the information requested by the court in this opinion so that the court can calculate whether and to what extent they are owed under the FLSA or NYLL for unpaid wages, unpaid overtime, unpaid spread-of-hours pay, as well as liquidated damages, pre- and post-judgment interest, and/or attorney's fees; and (5) all plaintiffs are owed damages for defendants' failure to provide regular wage statements and annual wage notices as required by the WTPA.

The court dismisses without prejudice for lack of subject-matter jurisdiction each of Morales's sexual harassment–related claims in Part II of the complaint.

SO ORDERED.

Dated: August 1, 2016
New York, NY

Thomas P. Griesa

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

32

*Appendix A: Calculation of Morales's Hours*

Week 1

| Day of Work (of 14) | Date | Range of Hours Worked | Number of Hours Worked |
|---|---|---|---|
| 1 | December 11, 2014 | 9:45 AM – 7:00 PM | 9.25 |
| 2 | December 12, 2014 | 9:45 AM – 6:00 PM | 8.25 |
| 3 | December 13, 2014 | 1:00 PM – 12:00 AM | 13 |
| 4 | December 14, 2014 | 1:00 PM – 12:00 AM | 13 |
| 5 | December 15, 2014 | 1:00 PM – 12:30 AM | 13.5 |
| 6 | December 16, 2014 | 1:00 PM – 12:30 AM | 13.5 |
| 7 | December 17, 2014 | N/A (sick day) | 0 |
| | | | Subtotal: 70.5 |

Week 2

| Day of Work (of 14) | Date | Range of Hours Worked | Number of Hours Worked |
|---|---|---|---|
| 8 | December 18, 2014 | 1:00 PM – 12:00 AM | 13 |
| 9 | December 19, 2014 | 1:00 PM – 12:00 AM | 13 |
| 10 | December 20, 2014 | 1:00 PM – 12:00 AM | 13 |
| 11 | December 21, 2014 | 1:00 PM – 12:00 AM | 13 |
| 12 | December 22, 2014 | 1:00 PM – 12:00 AM | 13 |
| 13 | December 23, 2014 | 1:00 PM – 12:00 AM | 13 |
| 14 | December 24, 2014 | 10:00 AM – 7:00 PM | 9 |
| | | | Subtotal: 87 |

Total Number of Hours Worked in 14 days: **157.5 hours**

Number of Overtime Hours Worked in Week 1: **70.5 hours – 40 regular hours = 30.5 overtime hours**

Number of Overtime Hours Worked in Week 2: **87 hours – 40 regular hours = 47 overtime hours**

*Appendix B: Unpaid Wages as to Jimenez-Corcione*

## Table 1: Unpaid Minimum Wages as to Jimenez-Corcione:

Regular Hours:

12/9/14 through 12/15/14:  40 hours

12/16/14 through 12/19/14: 40 hours

80 hours at $8.00/hour = $640 (what Jimenez-Corcione should have been paid at the minimum wage)

Jimenez-Corcione was actually paid: 73 hours x $8.25/hour = $602.25

Given that Jimenez-Corcione actually worked 80 regular hours, his hourly rate was: $602.25/80 = $7.53/hour.  Jimenez-Corcione was therefore paid $0.47/hour below the statutory minimum wage.

Jimenez-Corcione should have been paid an additional:  $640 - $602.25 = $37.75 in regular wages.

Spread-of-Hours Pay:

Number of days on which Jimenez-Corcione worked an excess of 10 hours:  11

Spread-of-hours calculation: 11 x $8.00 = $88

## Table 2: Unpaid Overtime Wages as to Jimenez-Corcione:

Overtime Hours worked:

12/9/14 through 12/15/14:  65 hours

12/16/14 through 12/19/14: 20 hours

85 hours at $12.00/hour = $1,020.00 (what Jimenez-Corcione should have been paid at the statutory overtime wage)

Jimenez-Corcione was not paid for any overtime.

Total unpaid minimum and overtime wages owed to Jimenez-Corcione:  $37.75 + $88.00 + $1,020.00 = **$1,145.75**

*Appendix C: Penalties for Wage Notice & Statement Violations*

### Table 1: Penalties Owed to Jimenez-Corcione

|  | # of Days worked | # of Weeks Worked (rounded up to the nearest week) | Penalty Amount | Amount Owed Under NYLL Statutes |
|---|---|---|---|---|
| Wage & Hour Statements | 11 | 2 | $250/work day | $2,750 |
| Wage Notice @ Time of Hiring | 11 | 2 | $50/work week | $100 |

### Table 2: Penalties Owed to Morales

|  | # of Days worked | # of Weeks Worked (rounded up to the nearest week) | Penalty Amount | Amount Owed Under NYLL Statutes |
|---|---|---|---|---|
| Wage & Hour Statements | 14 | 2 | $250/work day | $3,500 |
| Wage Notice @ Time of Hiring | 14 | 2 | $50/work week | $100 |

### Table 3: Penalties Owed to Martinez

|  | # of Days worked | # of Weeks Worked (rounded up to the nearest week) | Penalty Amount | Amount Owed Under NYLL Statutes |
|---|---|---|---|---|
| Wage & Hour Statements | 17 | 3 | $250/work day | $4,250 |
| Wage Notice @ Time of Hiring | 17 | 3 | $50/work week | $150 |